UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

IKEIE SMITH,

                Plaintiff,

v.

RAY RUBLEY et al.,

                Defendants.

_____/

Case No. 1:22-cv-925

Honorable Paul L. Maloney

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 5.) Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Macauley, Unknown Party, and Moyer. The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Rubley and Welch: (1) Plaintiff's official capacity claims; (2) Plaintiff's First Amendment retaliation claims; (3) Plaintiff's Eighth Amendment claims alleging verbal harassment and abuse; and (4) Plaintiff's Eighth Amendment failure to protect claims premised

upon the second assault by inmate Hoskins. The following claims remain in the case: (1) Plaintiff's Eighth Amendment claims against Defendants Rubley and Welch for urging the first assault by inmate Hoskins; and (2) Plaintiff's Eighth Amendment excessive force and sexual assault claims against Defendant Rubley. The Court will also deny Plaintiff's motion to appoint counsel. (ECF No. 3.)

### Discussion

### I.     Motion to Appoint Counsel

Plaintiff has filed a motion to appoint counsel, arguing that the issues involved "are complex and will require significant research and investigation." (ECF No. 3, PageID.14.) Plaintiff also indicates that he has limited access to the law library, and that counsel would enable him to better "present evidence and cross-examine witness[es]." (*Id.*) Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. The Court, therefore, will deny Plaintiff's motion to appoint counsel.

## II.     Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. The events about which he complains, however, occurred at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. Plaintiff sues Warden Matthew Macauley, Assistant Deputy Warden Unknown Party, Inspector Unknown Moyer, and Correctional Officers Ray Rubley and Unknown Welch. Plaintiff indicates that he is suing Defendants in both their official and personal capacities. (ECF No. 1, PageID.2.)

In Plaintiff's listing of the Defendants, he identifies the unknown party as "John Doe" an assistant deputy warden. (*Id*.) Plaintiff uses the same appellation for a corrections officer who allegedly opened Plaintiff's cell door from the bubble on March 26, 2020 (*id*., PageID.3), and a sergeant who listened to Plaintiff's report of the assault in Plaintiff's cell but simply sent Plaintiff back to his cell (*id*.). The Court construes Plaintiff's reference to "John Doe" in the listing of Defendants as an assistant deputy warden, not the corrections officer or the sergeant. Nonetheless, the Court will consider the sufficiency of Plaintiff's allegations against all three potential "John Does."

Plaintiff alleges that for about two weeks prior to March 26, 2020, he was subjected to harassment and threats by Defendants Welch and Rubley. (*Id.*, PageID.3.) Plaintiff sent kites to Defendants Moyer and Macauley, as well as Lloyd Blackman (not a party), to no avail. (*Id.*) In the kites, Plaintiff explained that he was "being verbally abused, harassed, and threatened by staff." (*Id.*) He asked to move out of the unit away from those staff members. (*Id.*)

On March 26, 2020, Corrections Officer John Doe opened Plaintiff's cell door, which allowed inmate Hoskins to enter the cell. (*Id.*) Plaintiff asserts that inmate Hoskins was not his assigned cell mate. (*Id.*) Inmate Hoskins physically and sexually assaulted Plaintiff, telling him

3

that he was sent to do so by Defendants Welch and Rubley. (*Id.*) After the assault, Defendant Welch came to Plaintiff's cell and opened the door. (*Id.*) He said, "[R]eady to lock up rapist?" (*Id.*) Plaintiff "hit the emergency [button] in the cell several times and was ignored." (*Id.*) He tried to speak to a Sergeant John Doe about what had happened but was told to go back to his cell. (*Id.*)

Later, Plaintiff packed up his property to go to segregation for protection. (*Id.*) His cell door was opened around 6:15 p.m. (*Id.*) Plaintiff left his cell and saw inmate Hoskins coming toward him with an object in his hand. (*Id.*) Inmate Hoskins swung at Plaintiff, and Plaintiff 'went in survival mode and defended" himself. (*Id.*) Several officers responded and ordered Plaintiff to get on the ground; Plaintiff did so. (*Id.*, PageID.4.) While Plaintiff was face down and handcuffed on the ground, Defendant Rubley lifted Plaintiff's head and punched him in the face. (*Id.*) He also put his finger in Plaintiff's anus. (*Id.*) Plaintiff reported the incident to medical staff, Defendant Moyer, and others. (*Id.*) Inmate Hoskins received a misconduct ticket for unauthorized occupation of a cell. (*Id.*) Plaintiff avers that Defendants Macauley and Moyer "failed to investigate what happen[ed] while [inmate Hoskins] was in [Plaintiff's] cell." (*Id.*)

Based on the foregoing, the Court liberally construes Plaintiff's complaint to assert First and Eighth Amendment violations. Plaintiff seeks compensatory and punitive damages, and asks for the officers' employment to be terminated. (*Id.*, PageID.5.)

## III.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The

court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Official Capacity Claims

Plaintiff names Defendants in both their official and personal capacities. (ECF No. 1, PageID.2.) Although an action against a defendant in his or her individual capacity intends to impose liability on the specified individual, an action against the same defendant in his or her official capacity intends to impose liability only on the entity that they represent. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).

A suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity: in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

Plaintiff seeks compensatory and punitive damages, as well as termination of the officers' employment. Official capacity defendants, however, are absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). The Court, therefore, will dismiss Plaintiff's claims for monetary damages against Defendants in their official capacities.

Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States

Supreme Court has determined that a suit under *Ex Parte Young* for prospective injunctive relief should not be treated as an action against the state. *Graham*, 473 U.S. at 167 n.14. Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

Importantly, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Plaintiff, however, is no longer confined at IBC, where he avers that the individual Defendants are employed. The Sixth Circuit has held that transfer to another prison facility moots a prisoner's claims for declaratory and injunctive relief. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996). Underlying this rule is the premise that injunctive relief is appropriate only where plaintiff can show a reasonable expectation or demonstrated probability that he is in immediate danger of sustaining direct future injury as the *result* of the challenged official conduct. *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *id.*; *Alvarez v. City of Chicago*, 649 F. Supp. 43 (N.D. Ill. 1986); *Bruscino v. Carlson*, 654 F. Supp. 609, 614, 618 (S.D. Ill. 1987), *aff'd*, 854 F.2d 162 (7th Cir. 1988); *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). Plaintiff is now incarcerated at AMF, and the individual Defendants are not employed at that facility. Plaintiff, therefore, cannot maintain claims for declaratory and injunctive relief against the individual Defendants, and such claims will be dismissed.[1]

---

[1] To the extent Plaintiff seeks declaratory and injunctive relief against Defendants in their individual capacities, such claims will also be dismissed for the reasons set forth above.

7

### B.     Individual Capacity Claims

#### 1.     Defendant Assistant Deputy Warden John Doe

Although Plaintiff specifically names Assistant Deputy Warden John Doe as a Defendant,
Plaintiff does not make any factual allegations against ADW Doe. It is a basic pleading essential
that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 545
(holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a
defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims
against government officials arising from alleged violations of constitutional rights must allege,
with particularity, facts that demonstrate what each defendant did to violate the asserted
constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v.
Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a
defendant without an allegation of specific conduct, the complaint is subject to dismissal, even
under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x
762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with
any degree of specificity which of the named defendants were personally involved in or
responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL
1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against
each defendant) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)); *Rodriguez
v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against
those individuals are without a basis in law as the complaint is totally devoid of allegations as to
them which would suggest their involvement in the events leading to his injuries."). Plaintiff fails
to even mention ADW Doe in the body of his complaint. His allegations fall far short of the
minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the

claim showing that the pleader is entitled to relief"). All claims against ADW Doe, therefore, are properly dismissed.

> ## 2.      Claims Against Defendants Macauley, Moyer, and Sergeant John Doe

Plaintiff contends that Defendants Macauley and Moyer failed to respond to his kites complaining about verbal abuse and harassment by Defendants Welch and Rubley. (ECF No. 1, PageID.3.) He further alleges that they failed to investigate the incidents with inmate Hoskins. (*Id.*, PageID.4.) Similarly, Plaintiff complains that Sergeant John Doe ordered Plaintiff back to his cell when he tried to report the assault. (*Id.*, PageID.3.)

Government officials, however, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,*

> 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Here, Plaintiff fails to allege any facts suggesting that Defendants Macauley and Moyer or Sergeant Doe encouraged or condoned the conduct of their subordinates, or authorized, approved, or knowingly acquiesced in that conduct. Plaintiff avers only that they failed to respond to his complaint or kites and failed to investigate the incident. As noted above, that is insufficient to impose § 1983 liability. *See Shehee*, 199 F.3d at 300. Plaintiff's conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendants Macauley and Moyer or Sergeant Doe were personally involved in the events described in Plaintiff's complaint. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555.

Furthermore, to the extent Plaintiff suggests that Defendants Macauley and Moyer or Sergeant Doe violated his rights by not responding to his kites or complaint and by failing to investigate, the Court notes that Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v.*

*Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants Macauley and Moyer's or Sergeant Doe's conduct did not deprive him of due process.

Moreover, Plaintiff's First Amendment right to petition the government was not violated by Defendants Macauley and Moyer's or Sergeant Doe's failures to investigate or act upon his complaints. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Finally, Defendants Macauley and Moyer's or Sergeant Doe's actions (or inactions) have not barred Plaintiff from seeking a remedy for his complaints. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access

11

to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001). In light of the foregoing, the Court finds that Plaintiff has failed to state a cognizable claim against Defendants Macauley and Moyer or Sergeant Doe based on a failure to investigate and failure to act upon his kites or oral complaint.

### 3.    First Amendment Retaliation Claims

The Court has liberally construed Plaintiff's complaint to assert First Amendment retaliation claims against Defendants Rubley and Welch given that Plaintiff alleges that he was assaulted by inmate Hoskins at their direction after he filed kites about their verbal abuse and harassment. Plaintiff's complaint can also be construed to suggest that Defendant Rubley punched Plaintiff in the face and sexually assaulted him to retaliate for Plaintiff's kites.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was

motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (discussing that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening].") (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).

Plaintiff has alleged that he engaged in protected activity by filing kites complaining about Defendants Rubley's and Welch's alleged verbal harassment and abuse. See *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Moreover, assaulting an inmate and using excessive force certainly qualify as adverse actions. However, Plaintiff merely alleges the ultimate fact of retaliation in this action. Plaintiff merely suggests that Defendants Rubley and Welch had inmate Hoskins assault Plaintiff and that Defendant Rubley punched Plaintiff in the face and assaulted him because Plaintiff had been

13

complaining about their verbal harassment for two weeks prior to March 26, 2020. In some circumstances, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004). Plaintiff's complaint is devoid of facts from which the Court could infer that Defendants Rubley and Welch knew about Plaintiff's protected conduct and that their actions were motivated by such. Accordingly, he fails to set forth First Amendment retaliation claims against Defendants Rubley and Welch. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

### 4.   Eighth Amendment Claims

The Court has construed Plaintiff's complaint to assert that several of the named Defendants violated his Eighth Amendment rights in various ways. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure

14

while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Therefore, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### a.      Verbal Harassment

Plaintiff contends that Defendants Welch and Rubley verbally abused, harassed, and threatened him. (ECF No. 1, PageID.3.) While unprofessional, allegations of verbal harassment or

threats by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment. *Ivey*, 832 F.2d at 955. Nor do allegations of verbal harassment rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Id.* The Court, therefore, will dismiss any Eighth Amendment claims premised upon verbal harassment that Plaintiff asserts against Defendants Welch and Rubley.

### b. First Assault by Inmate Hoskins

#### i. Defendants Welch and Rubley

Plaintiff contends that on March 26, 2020, he was physically and sexually assaulted by inmate Hoskins, and that inmate Hoskins told him that he was sent by Defendants Welch and Rubley. This assault can be characterized as deliberately indifferent to Plaintiff's safety or, alternatively, as an "unnecessary and wanton infliction of pain," which is also prohibited by the Eighth Amendment. *See Rhodes*, 452 U.S. at 346. Plaintiff's allegations, therefore, are sufficient to state an Eighth Amendment claim against Defendants Welch and Rubley premised upon Plaintiff's assault by inmate Hoskins.

#### ii. Corrections Officer Doe

Plaintiff alleges that on March 26, 2020, Corrections Officer Doe was responsible for opening his cell door, which allowed inmate Hoskins to enter his cell. (ECF No. 1, PageID.3.) Plaintiff avers that inmate Hoskins was not his cell mate and that it is the officer's "job to know what inmate[s] are assigned to what cell." (*Id.*) Inmate Hoskins physically and sexually assaulted Plaintiff in his cell. (*Id.*) It is possible that Plaintiff intended to assert an Eighth Amendment failure to protect claim against Corrections Officer Doe.

In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they may not use excessive physical force against prisoners and must also "take reasonable measures to guarantee the safety of the inmates." *Farmer*,

511 U.S. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). To establish liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, a plaintiff must show that the prison official acted with "deliberate indifference" to a substantial risk of serious harm facing the plaintiff. *Farmer,* 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Bishop v. Hackel*, 636 F.3d 757, 766–67 (6th Cir. 2011); *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.* 69 F.3d 76, 79 (6th Cir. 1995). Deliberate indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Bishop*, 636 F.3d at 766–67.

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer*, 511 U.S. at 833. Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson*, 468 U.S. at 526. In particular, because officials have "stripped [prisoners] of virtually every means of self-protection[,]" "officials have a duty to protect prisoners from violence at the hands of other prisoners." *Id.* at 833. To establish a violation of this right, Plaintiff must show that Defendant was deliberately indifferent to the Plaintiff's risk of injury. *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 880–81 (6th Cir. 1988). While a prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim, he must at least establish that he reasonably fears such an attack. *Thompson v. Cnty. of Medina*, 29 F.3d 238, 242–43 (6th Cir. 1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection"

17

between the alleged violation and inmate violence to "justify a reasonable fear for personal safety.").

Here, Plaintiff's complaint is devoid of allegations that Corrections Officer Doe knew of any risk of harm posed to Plaintiff by inmate Hoskins. While Plaintiff avers that Corrections Officer Doe was responsible for opening his cell door, the complaint is wholly devoid of facts from which the Court could infer that Doe knew that inmate Hoskins intended to assault Plaintiff and opened Plaintiff's cell door to facilitate that assault. Moreover, nothing in the complaint permits the Court to infer that Corrections Officer Doe was even aware that inmate Hoskins had entered Plaintiff's cell. In short, Plaintiff's complaint is simply devoid of facts from which the Court could infer that Corrections Officer Doe was aware that inmate Hoskins would assault Plaintiff and consciously disregarded that risk to Plaintiff's safety. *See Farmer*, 511 U.S. at 837; *see also Bishop*, 636 F.3d at 766–67. The Court concludes, therefore, that Plaintiff fails to state an Eighth Amendment failure to protect claim premised upon the first assault by inmate Hoskins against Corrections Officer Doe.

### c.     Second Assault by Inmate Hoskins

The Court's liberal construction of Plaintiff's complaint leads the Court to conclude that Plaintiff may be asserting Eighth Amendment failure to protect claims against all Defendants for failing to protect him from the second assault by inmate Hoskins. As noted above, in the evening of March 26, 2020, Plaintiff had packed up his property to go to segregation for protection. (ECF No. 1, PageID.3.) The bubble officer opened his cell door at 6:15; Plaintiff does not know why the officer opened his door. (*Id.*) Plaintiff grabbed his property and exited his cell. (*Id.*) Immediately, inmate Hoskins came towards Plaintiff with an object in his hand. (*Id.*) Inmate Hoskins swung at Plaintiff, and Plaintiff defended himself. (*Id.*)

Plaintiff's complaint, however, is devoid of allegations that any of the named Defendants knew or, or should have known, that inmate Hoskins intended to assault Plaintiff a second time. While Plaintiff indicates that the bubble officer opened his cell door for an unknown reason, nothing in the complaint suggests that any of the named Defendants personally opened his cell door. Plaintiff's complaint is simply devoid of facts from which the Court could infer that Defendants were aware that inmate Hoskins would assault Plaintiff a second time and consciously disregarded that risk to Plaintiff's safety. *See Farmer*, 511 U.S. at 837; *see also Bishop*, 636 F.3d at 766–67. The Court, therefore, will dismiss Plaintiff's Eighth Amendment failure to protect claims against Defendants premised upon the second assault by inmate Hoskins.

### d.    Excessive Force

Plaintiff contends that after the second assault by inmate Hoskins, he complied with officers' orders and got on the ground. While he was face down on the ground, Defendant Rubley lifted his head and punched him in the face. (ECF No. 1, PageID.4.) Plaintiff's claim must be analyzed under the Supreme Court authority limiting the use of force against prisoners. This analysis must be made in the context of the constant admonitions by the Supreme Court regarding the deference that courts must accord to prison or jail officials as they attempt to maintain order and discipline within dangerous institutional settings. *See, e.g.*, *Whitley v. Albers*, 475 U.S. 312, 321–22 (1986).

Not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson*, 503 U.S. at 9 (holding that "[n]ot every push or shove...violates a prisoner's constitutional rights") (internal quotations omitted). On occasion, "[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law." *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002) (citing *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995). Prison officials

nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (internal quotation marks omitted); *Bailey v. Golladay*, 421 F. App'x. 579, 582 (6th Cir. 2011). Given Plaintiff's allegations against Defendant Rubley, the Court concludes that Plaintiff has set forth a plausible Eighth Amendment excessive force claim against him.

### e.    Sexual Assault

Plaintiff contends that while he was lying on the ground, handcuffed, per orders after the second assault by inmate Hoskins, Defendant Rubley put his finger into Plaintiff's anus. (ECF No. 1, PageID.4.) "Federal courts have long held that sexual abuse is sufficiently serious to violate the Eighth Amendment. . . . This is true whether the sexual abuse is perpetrated by other inmates or by guards." *Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1095 (6th Cir. 2019) (citing *Farmer*, 511 U.S. at 848–49 (discussing inmate abuse); *Bishop v. Hackel*, 636 F.3d 757, 761 (6th Cir. 2011) (same); *Washington v. Hively*, 695 F.3d 641, 642 (7th Cir. 2012) (abuse by guards)). As set forth above, Plaintiff contends that this assault occurred immediately after a use of excessive force by Defendant Rubley. At this stage of the proceedings, the Court concludes that Plaintiff has sufficiently set forth an Eighth Amendment sexual assault claim against Defendant Rubley.

### <u>Conclusion</u>

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Macauley, Unknown Party (ADW Doe), and Moyer will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Rubley and Welch: (1) Plaintiff's official capacity claims; (2) Plaintiff's First Amendment retaliation claims; (3) Plaintiff's Eighth Amendment claims alleging verbal harassment and abuse; and (4) Plaintiff's Eighth Amendment failure to protect claims premised

upon the second assault by inmate Hoskins. The Court also notes that, to the extent Plaintiff intended to state a claim against either Sergeant John Doe or Corrections Officer John Doe, he has failed to allege facts to support such a claim. The following claims remain in the case: (1) Plaintiff's Eighth Amendment claims against Defendants Rubley and Welch for urging the first assault by inmate Hoskins; and (2) Plaintiff's Eighth Amendment excessive force and sexual assault claims against Defendant Rubley. The Court will also deny Plaintiff's motion to appoint counsel. (ECF No. 3.)

An order consistent with this opinion will be entered.


Dated:   October 25, 2022                                  /s/ Paul L. Maloney
                                                            Paul L. Maloney
                                                            United States District Judge