UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IKEIE SMITH, #369273,

      Plaintiff,                          Hon. Paul L. Maloney

v.                                           Case No. 1:22-cv-925

RAY RUBLEY, et al.,

      Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion for Summary Judgment. (ECF No. 27). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be denied.

## BACKGROUND

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility (AMF). The events giving rise to this action, however, occurred while Plaintiff was incarcerated at the Bellamy Creek Correctional Facility. (IBC). In his amended complaint, Plaintiff has asserted claims against the following IBC personnel (1) Guard Ray Rubley; (2) Guard Brandon Welch; (3) Assistant Deputy Warden (ADW) Unknown Blackman; (4) Inspector Unknown Moyer; (5) Sergeant Unknown Stomp; and (6) Guard Unknown Doe. (ECF No. 21). In his amended complaint, Plaintiff alleges the following.

-1-

On January 2, 2020, Plaintiff observed "several guards using excessive force on [an] inmate." When Plaintiff yelled to the guards, "stop he's not even resisting at all," Defendant Rubley responded to Plaintiff, "shut your mouth Smith, back the fuck up or we'll do the same to you." Plaintiff complied, but later reported the use of excessive force to Defendant Stomp. Plaintiff further stated that he would "report the incident to Administration and file a complaint to the Director's Office in Lansing." Stomp responded, "mind your own business, do your time, or find yourself in a hard place around here." Later that day, Plaintiff submitted kites to Defendants Blackman and Moyer "requesting an investigation regarding excessive use of force used by Defendant Rubley and other staff."

On January 3, 2020, Plaintiff "mailed a formal complaint about the incident to the MDOC Director's office." Later that day, Defendant Welch approached Plaintiff's cell and stated to Plaintiff, "I hear you reported Rubley and some of my other staff to the [Sergeant] and wrote kites to the Warden and Inspector. Smith are you asking for trouble, fuck boy." Welch later returned to Plaintiff's cell and instructed Plaintiff, "pack your shit rat, you going to the hole for being a snitch, don't come back out the hole, this your only warning." Plaintiff was placed in segregation for "failure to disperse" during the January 2, 2020 incident noted above.

Approximately one hour later, Plaintiff was taken to segregation. While escorting Plaintiff, Defendant Stomp stated to Plaintiff, "told you to mind your own business, a hard head makes a soft ass. Me, Rubley, and our other staff are the most

powerful gang in MDOC. This is what happens when you report one of us. We throw you in the hole for a bogus ticket and if you come out the hole, we get a crash test dummy to hurt you. We run this prison Smith and we hate rats." While in segregation, Plaintiff was informed by "several inmates" that Defendants Rubley and Welch "were offering to pay inmates to hurt Plaintiff if he left segregation and returned to general population." Plaintiff reported this information to the Warden and various other prison officials.

On March 10, 2020, Plaintiff was released from segregation and returned to general population. When Plaintiff arrived at his housing unit, Defendant Rubley asked Plaintiff, "didn't Stomp and Welch tell you what would happen if you came out the hole?" Plaintiff answered, "I don't want no problems, I should not have reported what I saw done to the inmate." Rubley responded, It's to[o] late for that Smith, this is not a game, you should have kept your mouth shut, we always win." Later that day, Defendant Rubley announced over the prison PA system, "cell 150 Smith you're a rapist and a rat, you not welcome here, sleep tight." From March 10, 2020, through March 26, 2020, Plaintiff was "harassed and threatened by Defendants Rubley, Welch, Stomp along with other staff members."

On March 26, 2020, Plaintiff informed Defendant Blackman that he was "in danger." Specifically, Plaintiff informed Blackman that he learned from inmate Lloyd that Defendants Rubley and Welch had paid Lloyd and another inmate, Hoskins, to assault Plaintiff. Lloyd backed out, but Hoskins had decided to "do the job alone."

-3-

Plaintiff requested "immediate protective custody or to be moved out of the unit." Defendant Blackman refused Plaintiff's request stating, "we not moving you because of issues with staff, you should have kept your mouth shut, deal with the consequences, you did this to yourself."

Later that day, Defendant Doe announced over the PA system, "Smith we have a gift coming to your cell, special delivery." Approximately 15 minutes later, Plaintiff's cell mate exited the cell. Approximately 10 minutes later, Defendant Doe opened Plaintiff's cell door after which inmate Hoskins entered Plaintiff's cell. Once Hoskins entered Plaintiff's cell, an unidentified guard "immediately closed the cell door."

Hoskins then "pulled out a knife and physically and sexually assaulted Plaintiff." Hoskins told Plaintiff that he "was sent by Rubley and Welch to fuck him up and make Plaintiff lock up [go to segregation]." After Hoskins assaulted Plaintiff, Defendant Welch opened Plaintiff's cell door so Hoskins could exit. Welch then asked Plaintiff, "ready to lock up rat, rapist? We warned you, now pack your shit and be gone [before] dinner or else." When Plaintiff later requested to go to segregation, Defendant Rubley laughed and stated, "it's too late for that now."

Plaintiff nevertheless returned to his cell and "packed all of his property." Shortly thereafter, Plaintiff exited his cell and as he was walking towards the "unit bubble," Hoskins approached Plaintiff and stated, "they want me to finish the job." Hoskins then "swung at Plaintiff physically assaulting him." Plaintiff was immediately ordered "to get on the ground." Plaintiff complied and was immediately handcuffed.

-4-

Defendant Rubley then "punched" Plaintiff "in the face" and "shoved his finger into Plaintiff's anus." Plaintiff was taken to segregation after which "staff" allowed other prisoner's to "take all of Plaintiff's property."

Plaintiff asserts the following causes of action: (1) failure to protect claims against Defendants Moyer, Blackman, Rubley, Welch, and Doe; (2) retaliation claims against Defendants Rubley, Welch, and Stomp; (3) excessive force claims against Defendants Rubley and Welch; and (4) conspiracy claims against Defendants Rubley, Welch, Stomp, and Doe. Defendants Rubley, Blackman, Moyer, Stump, and Welch now move for summary judgment on the ground that Plaintiff has failed to properly exhaust his administrative remedies. Plaintiff has responded to Defendants' motion. The Court finds that oral argument is unnecessary. *See* W.D. Mich. LCivR 7.2(d).

## **SUMMARY JUDGMENT STANDARD**

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Whether a fact is "material" depends on "whether its resolution might affect the outcome of the case." *Harden v. Hillman*, 993 F.3d 465, 474 (6th Cir. 2021).

A party moving for summary judgment can satisfy its burden by demonstrating that the non-moving party, "having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party makes this showing, the non-

moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006). The existence of a mere "scintilla of evidence" in support of the non-moving party's position, however, is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005).

While the Court must view the evidence in the light most favorable to the non-moving party, that party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006). Likewise, the non-moving party cannot merely "recite the incantation, 'credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353-54 (6th Cir. 2004).

Accordingly, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735. Stated differently, the "ultimate question is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law." *Harden*, 993 F.3d 465 at 474.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). Accordingly, summary judgment in favor of the party with the burden of proof "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action regarding prison conditions under 42 U.S.C. § 1983 must first exhaust his administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). This obligation only extends, however, to such administrative remedies as are available. *Ross v. Blake*, 578 U.S. 632, 642 (2016) (a prisoner "must exhaust available remedies, but need not exhaust unavailable ones").

Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Ibid*.

With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

MDOC Policy Directive 03.02.130 articulates the applicable grievance procedures for prisoners in MDOC custody. Prior to submitting a grievance, a prisoner must attempt to resolve the issue with staff, unless prevented by circumstances beyond his control, or the issue falls within the jurisdiction of Internal Affairs. MDOC Policy Directive 03.02.130 ¶ Q (Mar. 18, 2019). The prisoner must attempt to resolve the matter within two days of becoming aware that there exists a grievable issue. (*Id.*).

If this attempt is unsuccessful (or such is inapplicable), the prisoner may submit a Step I grievance, but such must be submitted within five business days after attempting to resolve the matter with staff. MDOC Policy Directive 03.02.130 ¶ W (Mar. 18, 2019). The issues asserted in a grievance "should be stated briefly but concisely" and the "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included." MDOC Policy Directive 03.02.130 ¶ S (Mar. 18, 2019).

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. MDOC Policy Directive 03.02.130 ¶ DD (Mar. 18, 2019). If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III. MDOC Policy Directive 03.02.130 ¶ HH (Mar. 18, 2019).

In support of their motion, Defendants have presented evidence that Plaintiff failed to pursue any prison grievance regarding the claims in his amended complaint. (ECF No. 28-3 at PageID.173-87). In response, Plaintiff has presented evidence that his attempts to submit and/or pursue prison grievances regarding his claims were thwarted by prison officials who either failed to provide him with grievance forms or who failed to process grievance forms he submitted. (ECF No. 31-1 at PageID.204-06).

This clearly creates a factual dispute on the question whether there existed any available administrative remedies for Plaintiff to pursue. Defendants argue that, because Plaintiff subsequently pursued two grievances regarding other matters, the Court should simply overlook Plaintiff's evidence. (ECF No. 28 at PageID.159). That Plaintiff was subsequently able to file grievances concerning other matters, however, does not carry the significance Defendants assert.

In *Surles v. Andison*, 678 F.3d 452 (6th Cir. 2012), a prisoner argued that his attempts to exhaust his administrative remedies were thwarted by prison officials who refused to process his grievances. *Id.* at 457. The MDOC countered that "the number

of grievances filed [by Surles] as reflected in the grievance screen, actually demonstrates that despite any allegation of being prevented from utilizing the grievance system, that Surles was able to file grievances on a more than regular basis." *Ibid.* The court rejected the MDOC's argument noting that "such an inference does not adequately show that MDOC employees did not interfere with Surles's ability to utilize the grievance process on certain occasions or as to particular claims. That Surles was able to file some grievances does not mean that he was able to file all relevant grievances or that he was not prevented from timely filing the grievances." *Id.* at 457-58.

Defendants also assert a second argument for the first time in their reply brief. (ECF No. 36). Plaintiff has asserted two excessive force claims. First, Plaintiff claims that Defendants Rubley and Welch hired inmate Hoskins to physically and sexually assault him. Second, Plaintiff alleges that Defendant Rubley sexually assaulted him by inserting his finger into his anus. Defendants argue that Plaintiff's claims concerning allegations of sexual abuse must be dismissed for Plaintiff's failure to properly exhaust such via the Prison Rape Elimination Act (PREA) grievance process. The Court is unpersuaded.

First, as is well recognized, courts generally disregard arguments asserted for the first time in a reply brief. *See, e.g., Trustees of Operating Engineers Local 324 Pension Fund v. Bourdow Contracting, Inc.*, 919 F.3d 368, 380 n.6 (6th Cir. 2019) (arguments asserted for the first time in a reply brief "are waived"); *Brown Bark I, L.P. v. Traverse City Light & Power Department*, 736 F.Supp.2d 1099, 1115 (W.D. Mich. 2010) ("it is well

established that a party may not raise an argument for the first time in a reply brief"); *Val's Auto Sales & Repair, LLC v. Garcia*, 367 F.Supp.3d 613, 620 (E.D. Ky. 2019) ("because it is improper to raise arguments initially in a reply brief, a court generally will not consider them"). This is a sufficient basis to reject Defendants' argument, but even considered on the merits the result is the same.

### A.     Solicitation Claims

MDOC policy defines the scope of activity that is covered by PREA and which, therefore, must be exhausted via the PREA grievance process. MDOC Policy Directive 03.03.140 (eff. Apr. 24, 2017). Plaintiff's allegations that Defendants Rubley and Welch solicited an inmate to sexually assault Plaintiff does not fit within the definition of "Staff-on-Prisoner Sexual Misconduct" articulated in this Policy. *Id.* at ¶ H. Defendants have advanced neither argument nor authority suggesting otherwise. Having failed to establish that Plaintiff was required to exhaust these claims through the PREA grievance process, Defendants have failed to meet their burden to show that such claims have not been properly exhausted.

### B.     Sexual Assault Claim

MDOC policy states that "[t]he PREA Grievance process is a two-step process. . ." *Id.* at ¶ EE. There is no dispute that Plaintiff filed a Step I PREA grievance against Defendant Rubley. (ECF No. 31 at PageID.204-12; ECF No. 36-1 at PageID.241-43, 254-55; ECF No. 37 at PageID.262-74). On the question whether Plaintiff pursued his grievance to step two, Defendants rely on an affidavit submitted by Litigation Specialist

-11-

Jaquine Castillo. (ECF No. 36-1 at PageID.241-43). Castillo asserts that MDOC records contain no evidence that Plaintiff pursued his PREA grievance to step two. (*Id.*). Plaintiff, however, asserts in an affidavit that he submitted to the appropriate prison official his step two PREA grievance for mailing. (ECF No. 37 at PageID.262-64, 276-85). At the January 3, 2024, hearing the Court held on this matter, defense counsel conceded that Defendants possessed no evidence to counter Plaintiff's evidence that he submitted his step-two PREA appeal for mailing.

Interpreted in a light most favorable to Plaintiff, this certainly creates a factual dispute whether Plaintiff utilized the administrative remedies that were *available* to him. Plaintiff certainly cannot be faulted for the failure, intentional or otherwise, of prison officials to mail or process a properly submitted grievance appeal. Accordingly, the undersigned recommends that Defendants' argument that Plaintiff failed to properly appeal his PREA grievance be rejected.

## **CONCLUSION**

For the reasons articulated herein, the undersigned recommends that Defendants' Motion for Summary Judgment (ECF No. 27) be denied.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

                                              Respectfully submitted,

Date: February 14, 2024                  /s/ Phillip J. Green
                                              PHILLIP J. GREEN
                                              United States Magistrate Judge