UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IKEIE SMITH, #369273,

        Plaintiff,                                    Hon. Paul L. Maloney

v.                                                     Case No. 1:22-cv-925

RAY RUBLEY, et al.,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

This matter is before the Court on Defendants' Motion for Summary Judgment. (ECF No. 72). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be granted in part and denied in part.

**BACKGROUND**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility (AMF). The events giving rise to this action, however, occurred while Plaintiff was incarcerated at the Bellamy Creek Correctional Facility. (IBC). In his amended complaint, Plaintiff has asserted claims against the following IBC personnel (1) Guard Ray Rubley; (2) Guard Brandon Welch; (3) Assistant Deputy Warden (ADW) Unknown Blackman; (4) Inspector Unknown Moyer; (5) Sergeant Unknown Stomp; and (6) Guard

-1-

Unknown Doe. (ECF No. 21). In his amended complaint, Plaintiff alleges the following.

On January 2, 2020, Plaintiff observed "several guards using excessive force on [an] inmate." When Plaintiff yelled to the guards, "stop he's not even resisting at all," Defendant Rubley responded to Plaintiff, "shut your mouth Smith, back the fuck up or we'll do the same to you." Plaintiff complied, but later reported the use of excessive force to Defendant Stomp. Plaintiff further stated that he would "report the incident to Administration and file a complaint to the Director's Office in Lansing." Stomp responded, "mind your own business, do your time, or find yourself in a hard place around here." Later that day, Plaintiff submitted kites to Defendants Blackman and Moyer "requesting an investigation regarding excessive use of force used by Defendant Rubley and other staff."

On January 3, 2020, Plaintiff "mailed a formal complaint about the incident to the MDOC Director's office." Later that day, Defendant Welch approached Plaintiff's cell and stated to Plaintiff, "I hear you reported Rubley and some of my other staff to the [Sergeant] and wrote kites to the Warden and Inspector. Smith are you asking for trouble, fuck boy." Welch later returned to Plaintiff's cell and instructed Plaintiff, "pack your shit rat, you going to the hole for being a snitch, don't come back out the hole, this your only warning." Plaintiff was placed in segregation for "failure to disperse" during the January 2, 2020 incident noted above.

Approximately one hour later, Plaintiff was taken to segregation. While escorting Plaintiff, Defendant Stomp stated to Plaintiff, "told you to mind your own business, a hard head makes a soft ass. Me, Rubley, and our other staff are the most powerful gang in MDOC. This is what happens when you report one of us. We throw you in the hole for a bogus ticket and if you come out the hole, we get a crash test dummy to hurt you. We run this prison Smith and we hate rats." While in segregation, Plaintiff was informed by "several inmates" that Defendants Rubley and Welch "were offering to pay inmates to hurt Plaintiff if he left segregation and returned to general population." Plaintiff reported this information to the Warden and various other prison officials.

On March 10, 2020, Plaintiff was released from segregation and returned to general population. When Plaintiff arrived at his housing unit, Defendant Rubley asked Plaintiff, "didn't Stomp and Welch tell you what would happen if you came out the hole?" Plaintiff answered, "I don't want no problems, I should not have reported what I saw done to the inmate." Rubley responded, It's to[o] late for that Smith, this is not a game, you should have kept your mouth shut, we always win." Later that day, Defendant Rubley announced over the prison PA system, "cell 150 Smith you're a rapist and a rat, you not welcome here, sleep tight." From March 10, 2020, through March 26, 2020, Plaintiff was "harassed and threatened by Defendants Rubley, Welch, Stomp along with other staff members."

On March 26, 2020, Plaintiff informed Defendant Blackman that he was "in danger." Specifically, Plaintiff informed Blackman that he learned from inmate Lloyd that Defendants Rubley and Welch had paid Lloyd and another inmate, Hoskins, to assault Plaintiff. Lloyd backed out, but Hoskins had decided to "do the job alone." Plaintiff requested "immediate protective custody or to be moved out of the unit." Defendant Blackman refused Plaintiff's request stating, "we not moving you because of issues with staff, you should have kept your mouth shut, deal with the consequences, you did this to yourself."

Later that day, Defendant Doe announced over the PA system, "Smith we have a gift coming to your cell, special delivery." Approximately fifteen minutes later, Plaintiff's cell mate exited the cell. Approximately ten minutes later, Defendant Doe opened Plaintiff's cell door after which inmate Hoskins entered Plaintiff's cell. Once Hoskins entered Plaintiff's cell, an unidentified guard "immediately closed the cell door."

Hoskins then "pulled out a knife and physically and sexually assaulted Plaintiff." Hoskins told Plaintiff that he "was sent by Rubley and Welch to fuck him up and make Plaintiff lock up [go to segregation]." After Hoskins assaulted Plaintiff, Defendant Welch opened Plaintiff's cell door so Hoskins could exit. Welch then asked Plaintiff, "ready to lock up rat, rapist? We warned you, now pack your shit and be gone [before] dinner or else." When Plaintiff later requested to go to segregation, Defendant Rubley laughed and stated, "it's too late for that now."

Plaintiff nevertheless returned to his cell and "packed all of his property." Shortly thereafter, Plaintiff exited his cell and as he was walking towards the "unit bubble," Hoskins approached Plaintiff and stated, "they want me to finish the job." Hoskins then "swung at Plaintiff physically assaulting him." Plaintiff was immediately ordered "to get on the ground." Plaintiff complied and was immediately handcuffed. Defendant Rubley then "punched" Plaintiff "in the face" and "shoved his finger into Plaintiff's anus." Plaintiff was taken to segregation after which "staff" allowed other prisoner's to "take all of Plaintiff's property."

Plaintiff asserts the following causes of action: (1) failure to protect claims against Defendants Moyer, Blackman, Rubley, Welch, and Doe; (2) retaliation claims against Defendants Rubley, Welch, and Stomp; (3) excessive force claims against Defendants Rubley and Welch; and (4) conspiracy claims against Defendants Rubley, Welch, Stomp, and Doe. Defendants Rubley, Blackman, Moyer, Stomp, and Welch now move for summary judgment. Plaintiff has responded to Defendants' motion. The Court finds that oral argument is unnecessary. *See* W.D. Mich. LCivR 7.2(d).

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Whether a fact is "material" depends on "whether its resolution might affect the outcome of the case." *Harden v. Hillman*, 993 F.3d 465, 474 (6th Cir. 2021).

A party moving for summary judgment can satisfy its burden by demonstrating that the non-moving party, "having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party makes this showing, the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006). The existence of a mere "scintilla of evidence" in support of the non-moving party's position, however, is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005).

While the Court must view the evidence in the light most favorable to the non-moving party, that party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006). Likewise, the non-moving party cannot merely "recite the incantation, 'credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353-54 (6th Cir. 2004).

Accordingly, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*,

396 F.3d at 735. Stated differently, the "ultimate question is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law." *Harden*, 993 F.3d 465 at 474.

## ANALYSIS

### I. Use of Excessive Force

Plaintiff advances two distinct excessive force claims against Defendants Rubley and Welch. Plaintiff first alleges that Rubley and Welch, "by paying inmate Hoskins to sexually and physically assault" him, violated his rights. (ECF No. 21, PageID.119). Plaintiff also alleges that Rubley used excessive force following Hoskins' second assault on him. (*Id.*). Specifically, Plaintiff alleges that after being handcuffed and subdued, Rubley "punched" Plaintiff "in the face" and "shoved his finger into Plaintiff's anus."

The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment. U.S. Const. amend. VIII. The excessive use of force which results in the unnecessary and wanton infliction of pain violates this provision. *See Whitley v. Albers*, 475 U.S. 312, 319 (1986). Claims alleging the excessive use of force have both a subjective and an objective component. *See Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991).

The objective component of the analysis examines whether the pain or deprivation allegedly suffered by the prisoner was "sufficiently serious" to implicate

the Eighth Amendment. *Ibid.* To be "sufficiently serious," the prison official's act or omission must deny the prisoner of "the minimal civilized measure of life's necessities," *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), as defined by contemporary standards of decency. *See Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004). While the Eighth Amendment does not prohibit every *de minimis* use of physical force, where "prison officials maliciously and sadistically use force to cause harm," contemporary standards of decency "always are violated" regardless whether the force applied was *de minimis* or resulted in injury. *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992).

The subjective component of the analysis examines whether the prison official's conduct reflected "obduracy and wantonness" or was instead the product of "inadvertence or error in good faith." *Wilson*, 501 U.S. at 299. In this respect, the relevant inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley*, 475 U.S. 320-21. When evaluating whether a prison official's conduct falls short of this standard, the Court must consider the following factors: (1) the need for the application of force, (2) the relationship between such need and the force used, (3) the threat reasonably perceived by the prison official, and (4) any efforts undertaken to temper the severity of the response. *Hudson*, 503 U.S. at 7. The absence of injury, while relevant, is not dispositive. *Ibid.* As the Supreme Court recently observed:

> When prison officials maliciously and sadistically use force to cause harm, the Court recognized, contemporary standards of decency always are violated. . .whether or not significant injury is evident.  Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.
>
> This is not to say that the absence of serious injury is irrelevant to the Eighth Amendment inquiry.  [T]he extent of injury suffered by an inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation.  The extent of injury may also provide some indication of the amount of force applied.  As we stated in *Hudson,* not every malevolent touch by a prison guard gives rise to a federal cause of action.  The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind.  An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim.
>
> Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts.  An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.

*Wilkins v. Gaddy*, 559 U.S. 34, 36-38 (2010) (internal citations and quotations omitted).

    A.    Paying Inmate to Assault Plaintiff

Plaintiff alleges that Defendants Rubley and Welch paid inmate Hoskins to assault him.  The Eighth Amendment is violated where a prison guard instructs an inmate to attack another inmate.  *See, e.g., Lunn v. Graham*, 2024 WL 2060872 at *6 (E.D. Mich., Apr. 1, 2024) (Eighth Amendment is violated if prison guard takes action "with intent to provoke an assault [against an inmate] or the fear of assault").

-9-

Defendants have submitted affidavits in which they assert that they "never instructed anyone to harass, threaten, verbally abuse, or physically harm Plaintiff in any way." (ECF No. 73-4, PageID.434-35; ECF No. 75-1, PageID.453-54). Plaintiff, however, has submitted sworn statements from three prisoners who assert that Defendants offered them "money and a TV" if they would assault Plaintiff. (ECF No. 86-3, PageID.547; ECF No. 86-4, PageID.549; ECF No. 86-6, PageID.553-54).

Plaintiff has also submitted a sworn statement from inmate Hoskins who likewise asserts that Defendants offered him "$100 in commissary, some drugs, and a TV" if he would assault Plaintiff. (ECF No. 86-7, PageID.556). Hoskins asserts that he agreed to Defendants' offer and assaulted Plaintiff on March 26, 2020. (*Id.*, PageID.556-59). Finally, Plaintiff has submitted an affidavit in which he asserts that when Hoskins assaulted him, Hoskins admitted that he had been "sent by. . .Rubley and Welch to fuck Plaintiff up." (ECF No. 86-9, PageID.569).

There plainly exists a genuine factual dispute regarding this claim. Accordingly, the undersigned recommends that with respect to this claim, Defendants Rubley and Welch are not entitled to summary judgment. The undersigned likewise recommends that Defendants' assertion of qualified immunity be rejected as it was clearly established when Defendants acted that it was unlawful for a prison guard to instruct an inmate to assault another inmate.

-10-

B.     Assaulting Plaintiff

As discussed above, Plaintiff alleges that he was assaulted by inmate Hoskins on two separate occasions on March 26, 2020.   Regarding the latter assault, Plaintiff alleges the following.   Hoskins assaulted Plaintiff in the hallway outside his cell after which prison staff arrived on the scene.   Plaintiff was immediately ordered "to get on the ground."   Plaintiff complied and was immediately handcuffed. Defendant Rubley then "punched" Plaintiff "in the face" and "shoved his finger into Plaintiff's anus."

Defendant Rubley asserts in an affidavit that he "did not punch Plaintiff in the face" and "never put my finger or any object in Plaintiff's anus."   (ECF No. 73-4, PageID.435).   Plaintiff, on the other hand, asserts in a sworn statement that Rubley "punched [him in] the face" and "then shoved his finger into [his] anus."   (ECF No. 86-9, PageID.570).   In the face of a clear factual dispute, Defendant Rubley argues that the video evidence of this incident reveals that "nothing inappropriate" occurred and, moreover, "that [he] could not have assaulted [Plaintiff] as he alleges." (ECF No. 73, PageID.393-94).   The Court is not persuaded.

As Defendant observes, when opposing parties offer conflicting accounts of the relevant events, one version of which "is blatantly contradicted by" video evidence, such that "no reasonably jury" could thereafter credit that version, summary judgment is appropriate.   *Scott v. Harris*, 550 U.S. 372, 380 (2007).   The

shortcoming with Defendant's argument, however, is that the video evidence in question (ECF No. 77) fails to even come close to satisfying this standard.

The camera that recorded the incident was located at the opposite end of a lengthy hallway. The scrum is, therefore, recorded from a significant distance and the recording simply fails to provide a clear depiction of what occurred. Furthermore, for much of the incident another prisoner is standing directly in the camera's line of sight effectively preventing the viewer from observing what was occurring in or around the scrum. In short, the video evidence fails to disprove or call into dispute Plaintiff's allegations. Stated differently, the video evidence does not "blatantly contradict" Plaintiff's allegations or evidence. Accordingly, the undersigned recommends that with respect to this claim, Defendant Rubley is not entitled to summary judgment. Likewise, the undersigned recommends that Defendants' assertion of qualified immunity be rejected as it was clearly established when Defendants acted that it was unlawful for a prison guard to subject a prisoner to excessive force as Plaintiff alleges.

## II.  Failure to Protect

Plaintiff alleges that Defendants Moyer, Blackman, Rubley, and Welch failed to protect him from assault by inmate Hoskins. (ECF No. 21, PageID.118-19). Plaintiff further alleges that Defendants Moyer and Blackman failed to protect him from the use of excessive force by Defendant Rubley. (*Id.*, PageID.118). Plaintiff's failure to protect claims implicate the Eighth Amendment which requires Plaintiff to

establish that Defendants were deliberately indifferent to "a substantial risk" that he might suffer "serious harm." *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (quoting *Farmer v. Brennan*, 511 U.S. 825, 828 (1994)). To establish that a defendant acted with deliberate indifference, Plaintiff must demonstrate that he was "subjectively aware of the risk," but failed "to take reasonable measures to abate it.'" *Greene*, 361 F.3d at 294 (quoting *Farmer*, 511 U.S. at 829, 847).

A.  Assault by Inmate Hoskins

With respect to the claims that Defendants Moyer, Blackman, Rubley, and Welch failed to protect him from assault by inmate Hoskins, Plaintiff must establish: (1) the defendant had reason to believe Plaintiff would be assaulted by another inmate and (2) he had both the opportunity and means to prevent the assault. *See, e.g., Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013). Furthermore, that a prison official may have acted negligently is insufficient to establish a violation of the Eighth Amendment. *See, e.g., Farmer*, 511 U.S. at 835 (to prevail on an Eighth Amendment claim, the plaintiff must establish that the defendant acted with a "state of mind more blameworthy than negligence").

1.  Defendants Moyer and Blackman

At his deposition, Plaintiff testified that Moyer and Blackman should have known he was in danger of being assaulted by another prisoner because Defendants Rubley and Welch had a reputation for being part of a "goon squad." (ECF No. 73-2, PageID.428-30). Plaintiff has presented no evidence, however, other than his

unsubstantiated opinion, that Defendants Rubley or Welch had a reputation for violating inmate rights. Moreover, even if Rubley or Welch had such a reputation, Plaintiff has presented no evidence that such was known to Defendants Moyer or Blackman. Thus, this allegation is insufficient to have put Moyer or Blackman on notice that Plaintiff was likely to be assaulted by another inmate.

Likewise, Plaintiff's assertions that he reported to Moyer and Blackman that he generally feared Defendants Rubley and Welch, (ECF No. 73-2, PageID.430; ECF No. 86-9, PageID.567), is insufficient. In sum, Plaintiff has presented no evidence that Defendants Moyer or Blackman had any reason to believe that Plaintiff might get assaulted by inmate Hoskins. Accordingly, the undersigned recommends that Defendants Moyer and Blackman are entitled to summary judgment on this claim.

2. Defendants Rubley and Welch

As discussed above, Plaintiff has presented evidence that Defendants Rubley and Welch instructed inmate Hoskins to assault Plaintiff. Thus, Defendants Rubley and Welch had reason to believe Plaintiff would be assaulted by Hoskins and, moreover, had the ability to prevent such assault. The undersigned recommends, therefore, that Defendants Rubley and Welch are not entitled to summary judgment as to this claim. The undersigned likewise recommends that Defendants' assertion of qualified immunity be rejected as it was clearly established when Defendants acted that it was unlawful for a prison guard to instruct a prisoner to assault another prisoner.

B.  Use of Excessive Force by Defendant Rubley

Plaintiff alleges that Defendants Moyer and Blackman failed to protect him from the use of excessive force by Defendant Rubley. To prevail on this claim, Plaintiff must establish that Defendants Moyer and Blackman either "observed" the force or "had reason to know" Rubley would employ excessive force. *See, e.g., Chaney-Snell v. Young*, 98 F.4th 699, 722 (6th Cir. 2024). Moreover, Defendants Moyer and Blackman must have "had both the opportunity and the means" to stop it. *Ibid.* Plaintiff has presented no evidence that would satisfy these elements. Accordingly, the undersigned recommends that Defendants Moyer and Blackman are entitled to summary judgment on this claim.

**III. Retaliation**

Plaintiff has advanced three distinct retaliation claims. All three claims are based on the same protected conducted, namely Plaintiff reporting to prison staff that Defendant Rubley and others were subjecting another inmate to excessive force. Plaintiff alleges three distinct actions allegedly taken in retaliation for reporting this conduct: (1) Defendants Rubley and Welch paid inmate Hoskins to assault Plaintiff; (2) Defendants Stomp, Rubley, and Welch threatened Plaintiff with physical violence; and (3) Defendant Rubley used excessive force against Plaintiff.

To prevail on a retaliation claim, Plaintiff must satisfy three elements: (1) he was engaged in constitutionally protected conduct; (2) Defendant took adverse action against him which would deter a person of ordinary firmness from continuing to engage in

protected conduct; and (3) the adverse action was motivated by Plaintiff's protected conduct. *See Holzemer v. City of Memphis*, 621 F.3d 512, 520 (6th Cir. 2010).

Defendants' argument for summary judgment is identical for all three of Plaintiff's claims. Specifically, Defendants argue they are entitled to relief on the ground that Plaintiff was not engaged in protected conduct when he reported to prison staff that Defendant Rubley and others were using excessive force on another prisoner. The Court is not persuaded.

Defendants concede that "filing or threatening to file a grievance is protected conduct," but then argue that a grievance constitutes protected conduct only if the matter that is the subject of the grievance is "personal to" the prisoner filing the grievance. (ECF No. 73, PageID.406). In support of this argument, Defendants cite to two decisions.

In *Thaddeus-X v. Love*, 215 F.3d 1327 (6th Cir., May 22, 2000), the court found that a prisoner's "threat to file a grievance against the defendant because he was eating food at the prison guard desk" did not constitute protected conduct. *Id.* at *3. The court reached this conclusion because the grievance was "patently frivolous" because the alleged conduct "had no adverse impact on" Thaddeus-X. *Ibid.* Likewise, in *White v. Perron*, 2023 WL 3871964 (W.D. Mich., Feb. 24, 2023), the court found that a prisoner's grievance that a prison guard was using the internet at work to conduct personal business was frivolous because the alleged conduct "had no impact on" the prisoner. *Id.* at *2-3.

Defendants interpret these two decisions as establishing the proposition that a grievance constitutes protected conduct only if the grievance concerns claims of wrongdoing against that prisoner. In the Court's estimation, however, these two decisions merely stand for the unremarkable, and well-established, proposition that a frivolous grievance does not constitute protected conduct. There is a world of difference between a prisoner complaining about a prison guard surfing the internet or eating at her desk, on the one hand, and complaining about prison guards unjustifiably beating another prisoner, on the other. While the former concern matters that have no impact on a prisoner, it is unreasonable to argue that the only prisoner impacted by an inappropriate use of force by prison guards is the prisoner on the receiving end of such violence.

Defendants' argument is rejected. Whether Plaintiff's conduct constitutes protected conduct is for a jury to resolve. *See, e.g., Cavin v. McBride*, 2024 WL 790402 at *9 (E.D. Mich., Jan. 31, 2024) (unless a prisoner's grievances are "indisputably frivolous," whether such constitute protected conduct is "a jury question"). The undersigned recommends, therefore, that Defendants Stomp, Rubley, and Welch are not entitled to summary judgment on Plaintiff's retaliation claims. The undersigned also recommends that Defendants' assertion of qualified immunity be rejected as it was clearly established when Defendants acted that it was unlawful to retaliate against a prisoner as Plaintiff has alleged.

### IV. Conspiracy

Plaintiff alleges that Defendants Rubley, Welch, and Stomp conspired to violate his rights. Specifically, Plaintiff alleges that Defendants conspired to cause him to be assaulted by inmate Hoskins and then subjected to excessive force by Defendant Rubley. Plaintiff's conspiracy claims fail for two reasons.

To prevail on his conspiracy claims, Plaintiff must satisfy the following elements: (1) a single plan existed; (2) the defendants shared in the conspiratorial objective to deprive Plaintiff of his constitutional rights; and (3) an overt act was committed in furtherance of the conspiracy. *See, e.g., Kyles v. County of Oakland*, - - - F.Supp.3d - - -, 2024 WL 1259472 at *5 (E.D. Mich., Mar. 25, 2024). Rather than present evidence satisfying these elements, Plaintiff simply asserts the conclusion that Defendants were engaged in a conspiracy. This is insufficient.

Second, as the Sixth Circuit recently held, "the intracorporate conspiracy doctrine applies in § 1983 suits to bar conspiracy claims where two or more employees of the same entity are alleged to have been acting within the scope of their employment when they allegedly conspired together to deprive the plaintiff of his rights." *Johnson v. City of Cleveland*, 925 F.3d 793, 818 (6th Cir. 2019). Defendants are employed by the MDOC and Plaintiff does not allege they were acting outside the scope of their employment. Thus, Plaintiff's conspiracy claims fail.

The undersigned recommends, therefore, that Defendants Rubley, Welch, and Stomp are entitled to summary judgment on Plaintiff's conspiracy claims.

## V.     Official Capacity Claims

Defendants argue that "Plaintiff's official capacity claims are barred by the Eleventh Amendment and should be dismissed." Plaintiff expressly states in his amended complaint, however, that he is suing Defendants in their "individual capacity" only. Thus, the undersigned recommends that this argument be rejected as moot.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Defendants' Motion for Summary Judgment (ECF No. 72) be granted in part and denied in part. Specifically, the undersigned recommends that: (1) Defendants Moyer and Blackman are entitled to summary judgment on Plaintiff's failure to protect claims and (2) Defendants Rubley, Welch, and Stomp are entitled to summary judgment on Plaintiff's conspiracy claims. As for Plaintiff's other claims against Defendants Rubley, Welch, and Stomp, the undersigned recommends that Defendants' motion for summary judgment be denied and such claims proceed forward.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

                                                                   Respectfully submitted,

Date: October 31, 2024                        /s/ Phillip J. Green
                                                                   PHILLIP J. GREEN
                                                                   United States Magistrate Judge